Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and this honorable court. Good morning. Welcome everyone to the 11th Circuit sitting out of Montgomery, Alabama this week. This is our second day and Judge Love, Judge Brasher and I very much regret that we weren't able to be with you in person in Montgomery this week and we very much appreciate your cooperation in presenting these arguments by Zoom. If we experience any technical difficulties today, I ask that you not panic. Please be patient. We have an excellent IT staff and they will get us back online as quickly as possible and we will make sure that you have your full opportunity to present your argument. You'll see on your screen a timer which will show green until you have two minutes left in your argument. Then it will turn yellow and then when it turns red, we ask that you please quickly conclude your remarks. Counsel, before you begin your arguments, I'll remind you that we have read your briefs and are very familiar with your cases and the relevant portions of the record, so we encourage you to use your time wisely and go directly to the heart of your arguments. With that, I will call the first case, number 20-13187, Walter Avarenga Romero v. U.S. Attorney General. For the petitioner, we have Mr. Miller. Mr. Miller, I see you've reserved five minutes for rebuttal and you may begin when you're ready. May it please the court. I am Ross Miller and I represent the petitioner, Walter Javier Avarenga Romero. Your honors, substantial evidence in the record does not support the board's denial of petitioner's requests for asylum, withholding of removal, and protection under the UN Convention Against Torture. The petitioner respectfully requests that this court reverse the board's and remand his case back to the agency for two reasons. First, because the evidence of record compels the conclusion that the petitioner established a well-founded fear of future persecution in El Salvador on account of his mental illness. And second, because the evidence also compels the conclusion that the petitioner will be singled out for torture in his country for the same reasons. Your honors, as the record reflects, the petitioner is a 30-year-old man with a severe mental disability, schizophrenia. He experiences hallucinations, hears voices, is prone to violent fits of verbal and violent aggression, physical aggression. He's been hospitalized on four separate occasions in the United States because of his mental illness, and he's been placed on suicide watch throughout his detention by the U.S. government. Despite his serious mental hygiene issues, the agency initially allowed the petitioner to court, resulting in his order of removal. On appeal, the board recognized that petitioner likely did not have the competency necessary to participate in his removal proceedings, let alone to serve as his own representative. Upon remand before the immigration judge, petitioner was deemed mentally incompetent, and a qualified representative was appointed to his case. Counsel, if I could fast forward a little bit for you. As Judge Pryor said, we're very familiar with the procedural history of this case and how we got here. What I'd like for you to do is to focus on what I see as the key finding here. The BIA, as I understand it, adopted the immigration judge's conclusion with regard to the nexus issue between there being a fear, a well-founded fear, and the PSG, the social group, the particular social group that was alleged here, and specifically found that your client would not be singled out because he would not be identified, as I understand it, or at least there was some evidence to suggest that he wouldn't be identified because of his mental illness. Do you agree with me that that was the finding of the board with regard to the asylum claim? Certainly, Your Honor. With regard to asylum, the board found, exactly as you said, that police and gang members in El Salvador wouldn't target petitioner because of his mental illness, and they cited here's expert witness, Dr. Samuel Nichols, in his credible testimony for this conclusion, and they specifically found that Dr. Nichols testified that such actors wouldn't recognize that petitioner has a mental illness unless they had formal mental health training. But, Your Honors, the record compels a contrary conclusion. First of all, in his declaration on pages 321 to 322, Dr. Nichols actually addresses this scenario found by the board, and he indicates that although individuals may not be aware that someone like a petitioner who is, again, prone to verbal and physical fits of outrage, they might not know that that person has a specific mental illness or what we would call a mental illness in the United States, but despite that, it's the behaviors that they would recognize, and it's the behaviors for which an individual like petitioner would be persecuted by Salvadoran police officers, gang members, and members of the general society. Dr. Nichols also addresses this in his credible testimony on page 224 of the record. Again, he notes that while society might not understand that petitioner has, again, what we refer to in the United States as a mental illness, they certainly would be able to recognize that his behaviors are demonstrative of somebody who, in Dr. Nichols' words, the society would find to be crazy or loco. Does it matter that the PSG was defined as a specific mental illness and that there isn't evidence that your client would be clearly identified as having that specific mental illness but generally quote-unquote loco or quote-unquote crazy? It wouldn't, Your Honor. One of the social groups that were advanced didn't contemplate schizophrenia at all. It simply contemplated an individual who displays bizarre or erratic behaviors. Again, the record demonstrates that petitioner is prone to these types of behaviors. Petitioner is somebody who exhibits verbal and physical fits of outrage. He's somebody who threatens self-harm. He wants to harm and kill other people. He's expressed that throughout the record. It doesn't matter specifically that an individual wouldn't recognize somebody as having schizophrenia in particular. What matters here is that those behaviors are targeted by petitioner's persecutors and that petitioner's persecutors would recognize again. Show me where in the record that one of the alternate proposed groups was defined solely by behavior. I'm looking at the list here and I don't know that I see any that are solely based on behavior as you just said. My apologies, Your Honor. I'm seeing the record on page 114. It does list several social groups and they do contemplate schizophrenia. I think the best one for you would be number six. That's correct. Which are individuals from El Salvador who suffer from severe mental disability. So generally mental disability is not specific to schizophrenia. That's correct, again under this general umbrella of conduct which demonstrates again in Dr. Nichols credible testimony and documentary evidence that an individual possesses these behaviors and would be deemed crazy by the society because he possesses those behaviors. But Dr. Nichols testimony on page for his declaration on page 317 also dispels the board's erroneous conclusions. And there he says that gang members in El Salvador actually specifically target mentally ill individuals for two reasons. The reasons are number one mentally ill individuals are often recruited by gang members to further their criminal intent or criminal motives such as by collecting rent from victims of the gang. But additionally gangs target mentally ill individuals in El Salvador for harm and even murder because it's an initiation ritual for gang members. They kill an individual such as somebody like Petitioner who has a mental illness and they do this in order to prove their clearly indicates that Salvadoran criminals specifically target individuals like Petitioner who have a mental illness and they target them for harm persecution and even for murder in furtherance of their motives. So this evidence your honor directly contradicts the board's conclusion that Petitioner's persecutors wouldn't be able to recognize him because they don't have formal mental health training. And your honors as this court recognized in the 2008 case Santa and asylum applicants credible testimony alone is sufficient to meet the low well-founded fear threshold necessary to establish a well-founded fear of future persecution. And this court's own words so long as there's a good reason to fear for future persecution. And fear what do you say about the and so I I saw this case I thought sort of the BIA's finding here was that although certainly people with mental illness in El Salvador are I don't know what you might say mistreated they're not treated appropriately that that's really less discrimination than just insufficient resources directed towards mental health that there are laws for example on the books that prohibit discrimination against individuals mental health issues. And so what this what your client is suffering which I certainly feel feel for him but what he would suffer in El Salvador is just sort of I don't know the way I interpreted the BIA to say that sort of run-of-the-mill lack of resources lack of health care lack of sort of sensitivity to the issues that mental people with mental illness have. So your honor those findings were in regards to petitioner's request for protection under the convention against torture. And they essentially the board and the agency essentially concluded that petitioner wouldn't be singled out for torture if he is forced to be hospitalized in El Salvador's only inpatient mental health treatment facility the National Psychiatric Hospital. And they based that conclusion exactly on what you're saying is that even though conditions in the National Psychiatric Hospital are abusive any harm or torture petitioner would suffer wouldn't be directed at him specifically with the intent to torture but instead would be the result of a lack of training and proper resources. And again the evidence of record compels a contrary conclusion in this report. Counsel as I just to clarify a little bit as I understand the asylum claim and this bleeds over a little bit into the torture claim there really is a a request for asylum or or allegations of persecution on three groups. Group number one is the police, group number two is the gangs, and group number three is mental health professionals. And the finding that that that Judge Bratcher just read to you was the one with regard to mental health professionals correct? That's correct your honor. That had nothing to do with with potential or alleged persecution regarding the police and potential persecution regarding gangs right? That's correct your honor. That finding in terms of nexus for the asylum claim and in terms of establishing eligibility for protection under the convention relates to mental health practitioners essentially at the National Psychiatric Hospital. Your honors I see my time is about to conclude. I respectfully reserve the rest of my time for rebuttal. Thank you. Ms. Wilson. Good morning your honors. May it please the court Sarah Wilson on behalf of the Attorney General. Let me let me start because I I have some issues that I really want to focus and hone in on that I'm concerned about. So as I said to me with and I'm only speaking regarding the asylum claim and I'm only speaking regarding the asylum claim of the allegations of well-founded fear of what is the evidence in the record that supports the the board's finding that gangs would not be able to clearly identify those who suffer from mental illness such that they would be targeted. So I want to take a step back before I answer that directly or I guess actually I'll answer directly. I think the board cites to the record evidence regarding the from the expert testimony but I'm going to step back just a little bit. I'm going to let you do that but here's the problem with that. Yeah that very paragraph that that's cited the one that's there the expert in that same sentence or that same paragraph states that and and I'll pull it because I think it is critical. What they meaning people in society is because that's the question that's based on we'll certainly be able to observe and understand that this person has bizarre behaviors that are the type of that would sort of stigmatize this person as being loco crazy or violent and so in that sense they would certainly be identifiable. What you and I call somebody with mental illness but people across society they may not use that term they might just simply say yeah he's a crazy guy watch out for him and that's on page that's the same site page 224 of the record. So in that very site he's saying that those with mental illness would certainly be identifiable to people in society. I agree with that reading. I don't I think that first they're not suggesting necessarily a correlation between you know crazy behavior and it being a diagnosable mental illness. I don't think that it makes that connection there. I think that you could read and it would be reasonable for IJ to have read that testimony as referring to you know more colloquially referring to people who act crazy or act violent as being don't mess with that person that person is crazy. So I don't think that that necessarily suggests that the IJ erred in relying on that testimony in the way that it did. But I think it would make sense to take a step back from that. Sorry to harp on it because that's the site that's there so I think it's critical that we talk about it. He says that they sort of stigmatize this person as being loco crazy or violent and so in that sense they would certainly be identifiable. What you and I call somebody with mental illness but people across society we're talking about El Salvador might not use that term they again meaning people in El Salvador might just simply say yeah he's a crazy guy. He's saying there that they're identifiable as loco crazy as loco and crazy right? I think yes but not necessarily as having a mental illness. I think that they can be using that word as that is a crazy person. That is a violent person. That is somebody that I want to stay away from without necessarily talking about them in terms of what how the PSG is defined here. How the particular social group here has two corresponding elements. So it has part of it that refers to having a diagnosed mental illness and the second having an outward sign or an outward demonstration of that through erratic behavior. The expert seems to be only focused on the expert. Council I'm sorry to interrupt but that's not 100% true because there were several alternate groups and the way the BIA handled this is and it's frankly I've never seen it before where they just assumed it away and then decided on something else. So we have to take as a given all the proposed groups and that includes here individuals from El Salvador who suffer from severe mental disabilities not having anything to do with behavior and then there are those that are schizophrenia plus behavior mental illness plus some behavior and some variety of bunch of different things. Right so the one that just refers to having just mental illness then doesn't have the erratic behavior. I don't think that they're relying on that one here because the crux of all of their persecution claims is an outward demonstration of that mental illness and so there's not a PSG claim or a connection there between somebody who's just is mentally ill without any outward signs for there. So I think that there would be a different nexus issue with to the one that doesn't have the erratic behavior connection that they're relying on. The crux of the argument here is what do we do though counsel with the overwhelming amount of evidence from the expert that he will be targeted based on and due to mental illness and that mental illness is clearly identifiable. So I'll look elsewhere it regarded his report page 321 which is one of the pages cited by your opposing counsel quote severe stigma across the society against persons with mental illness makes them easy to signal out since their behavior and physical condition is easily identifiable with person that others call crazy. And then on page 302 quote the persons with mental illness quote are a frequent site in the capital city of San Salvador and easily identifiable because they are unwashed and dirty in dark dirty red clothes unkempt hair bare feet with calluses and open sores. I'm just having trouble when you have three different individual testimony from an expert and everyone can see he's an expert saying how folks are easily identifiable how that doesn't compel a contrary to conclusion from the BIA who says that they will not be that this that this petitioner will not be identifiable as as someone with mental illness or crazy or loco. I think here would be a good time for me to make that initial point that I think we ought to step back from the way that they that the IJ was approaching the case and the testimony here. You know literally the IJ does say that this person would not be recognizable but I think that the message here the underlying holding is less about whether or not he would be recognized as having a mental health issue or whether all such people are recognizable in society but they're making the point that that that they're that the focus there is on the outward display of violent or strange behavior and not on the the mental disability so the animus could never be solely based on that mental disability or that mental health issue so I just don't think that the connections there necessarily yeah I'm not sure that the BIA adopted that but but to the extent the BIA did make that finding how does that square with the testimony of the expert here and again all you need to do is look at his uncontested report here where he consistently says that gangs will target based on mental illness not behavior but on mental illness and again I'll quote from the report page 321 in my professional experience there is a high likelihood that client clienteers the petitioner will be signaled out for persecution by gangs with the acquiescence of the government or government officials based on his severe mental illness and erotic not because of but but that and the other and then on page 371 it is common for mentally ill persons to be called names by gangs due to their illness be to physically to be to be physically beaten be killed by members who are either frustrated by bizarre behavior with persons with mental illness or who try to prove their worth by attacking vulnerable persons including those with mental illness I mean how are we to conclude anything contrary that it's not behavior based but it's because of the mental illness itself so at first I I think it's important to remember that we don't have to give deference to the legal interpretation of the expert we don't have to accept the way that he is using the words because of that's a that's a legal interpretation that's something that here's what to do that's a that's a great argument except that we our court has specifically said that nexus is a fact finding and here we have expert testimony on that fact find so but that's not that's not the only evidence on this fact finding though and so I think that it's more helpful if you go through each one of the various ways that they're they're alleging that this persecution this future persecution may happen and look at what the record as a whole suggests because again I think that's a conclusory blanket statement isn't necessarily enough to get you there uh so first let me if I may add to Judge Luck's question the immigration judge found both Mr. Alvarenga's testimony and the expert's testimony to be credible so why doesn't the BIA's conclusion contradict that finding the BIA is not suggesting that the expert is incredible they're suggesting that the whole of the evidence is suggesting that it's not necessarily tied to the that any sort of future persecution wouldn't be tied to the illness but instead to the erratic behavior so there are a lot of overlapping theories that happen in this record so I think it's helpful to look at them more directly and individually before we you know sort of defer to these blanket assertions by by the expert petitioner's testimony himself focuses a lot on his fear being that he will act in a violent way to a gang member which will then cause some sort of retaliation or some sort of fight with that gang member if you look at his testimony at page 237 he talks about how he's paranoid he's afraid of people trying to harm him he's particularly afraid of people that have tattoos on page 240 249 he talks about how he thinks he's going to fight fight the gangs he he you know he talks about there being some sort of violent aspect to his the way that he displays or the way that he presents in his schizophrenia and that being what brings him to the attention of the gangs so we were talking about that particular theory I think it's pretty clear that that doesn't satisfy this circuit standard for whether or not it's a central reason in that situation the petitioner's schizophrenia isn't the cause of the gay member making a decision to attack him it is based on being provoked by behavior that he's displaying that you know as as he's acknowledged could be violent or could be even him trying to trying to kill or think that the person are displaying paranoid tendencies about the gang members and the gang members intentions so that's one part of it another part of it the police evidence seems to really have two different theories happening there the primary one appears to be that the petitioner again will act in a suspicious manner but the police won't think oh hey that's somebody who's you know has mental illness I want to go after him but instead will act in the way that you would expect police to act when they have you know when they see somebody acting suspiciously and the record gives a lot of color to that by explaining that there is a massive gang war happening in the place they expect that he potentially could be homeless and in that in part of their efforts to combat the gang war is to you know kind of react that way or be overly cautious with everyone and in that case I think that there is a different nexus problem and that he hasn't established that suspicious behavior would be based on the on the police deciding to target him based on the mental illness instead it's based on his behavior I think that the expert appears to believe that all of the sort of persecution from the police he's attaching some some documents to his test his record or his report that talk about how everyone within a certain age group would be stopped and and is at risk of being detained and again that's a blanket criminal motivation not a not anything that's based on or shows that his mental illness is central to the the risk that he may face and separately well I'll just could you address this issue about the the mental health care provided in El Salvador because it seems to me that this all is linked together there's a paragraph in the BIA's decision that expressly links it all together and it seems to me that the link is that because El Salvador doesn't provide adequate mental health care to people that's why people end up homeless and that's why he will be picked on by gangs it's anybody who is walking on the streets homeless yelling at gang members you know an easy victim for crimes whether you're mental whether it's a mental illness or whatever seems like is going to be picked on by gang members and perhaps police so isn't that really at the heart of the case is that there just isn't adequate mental health care in El Salvador? I think that's a I think that's a fair reading but I think you're raising a very important point about the non-violent erratic behavior that might draw attention from the gang members or the police I think the record there suggests that the gang members or the police would would be the the best reading of that anyway would be that he's um his behavior might make him more likely to be caught in the crosshairs or less likely to take steps to protect himself from the ongoing gang violence. Let me ask you this way I guess which is why isn't he being picked on by gangs and the police in the United States of America right why isn't that happening here is it because he doesn't suffer from schizophrenia or is it because he's just being treated um for that mental illness while he's here? I think we don't have that we don't have the rampant gang problem sorry well I guess I'm saying if you were released on the street well I'm just if you were released out on the street and he had no mental access to mental health care and you were going around a downtown area yelling at gang members um and potentially having violent confrontations with him with them would he be wouldn't wouldn't wouldn't the same thing happen to him here uh that we expect to happen to him in El Salvador which is that the gang members are going to do something in response to what he is doing to them I think I think when you're talking about the violent acts if you go and make a threat to kill a gang member to their face I think you would expect the same thing potentially to happen I think if you commit a crime in front of a police officer you would expect the same thing to happen here and so the difference really is I suppose what what how well we can keep them medicated although there is evidence in the record that he's not taken his medicine and it has been found on the streets um but I think for the lesser degrees to the extent he's claiming that he's just going to be singled out by gang members that evidence still doesn't suggest that his his disability or his schizophrenia would be a central reason because it really talks about general crime that it's just a very dangerous place to live and that he his condition just simply makes him more vulnerable to that or less likely to be able to avoid being in the crosshairs council didn't dr nichols though specifically say that the risk is increased for the mentally ill over the not the standard for this circuit the circuit doesn't accept that just because you are more vulnerable to ongoing crime that you suddenly are you know that that crime is now targeting you based on being part of that social group if the court looks at it had some recent decisions over the summer if it looks at the sanchez castro decision uh at 9 9 98 fed third 12 81 that's where the court has now adopted the board's view of the nexus standard adopted lea1 and said look just look at this as a but for question we're also going to ask the question about what is the motivation for this and we're going to question whether or not there's underlying animus related to those sent to the particular social group and here they can't show that there's animus related to the to the underlying social group whether that be schizophrenia or a mental health issue the animus or the motivating feature is about the outward displays of that and that's not enough for for for nexus in this circuit now uh since i have just 30 more seconds i'd like to also point the court to another very similar decision that was issued over just this month it's the angel lopez decision it involves the same psg the same mental health uh two-part schizophrenia it has testimony from the same expert in which this court decided that there was simply no nexus for for the reasons that are very similar to the ones that are identified by the board so that's anha lopez is that you should follow notice of supplemental authority about that if you want us to read that thank you miss wilson your time has expired thanks mr miller rebuttal may it please the court your honors fundamentally the board in this case denied asylum and withholding of removal based on nexus grounds and the board specifically found as the court recognized today that there was no nexus in this case because dr nichols testimony and documentary evidence of record demonstrated that police and gang members in el salvador would not be able to recognize someone with a mental illness unless they had formal mental health training but the evidence of record directly compels a contrary conclusion to this result again dr nichols credibly testified and its documentary evidence establishes that salvadoran police officers and criminal gang members are aware of individuals who have mental illness and that they harm and persecute such individuals for their mental illness additionally your honors opposing counsel cited this court's recent decision in anha lopez versus u.s attorney general if i may have the opportunity to respond to that essentially your honors on how lopez is similar to the case of bar but it's also distinguishable although both cases found that there was no nexus to a mental illness claim for a salvadora national in on how lopez um it was determined that uh the petitioner's father would be able to take care of him so he wouldn't be homeless it was also determined in on how lopez that the petitioner there was good about taking his medication and that as a result his symptoms were under control that played heavily into the court's determination that there would be no nexus in the case of bar dr nichols credibly testified and petitioner's medical records indicate that he's been hospitalized in the united states on four separate occasions because of his mental illness and the credible testimony and documentary evidence in this case also compels a conclusion that petitioner refuses to take his medication indeed when he was in custody in the custody of the government petitioner actually was hoarding his medication in what appears to be an attempt to commit suicide and so and so your honors it's clear that this case is largely distinguishable additionally in on how lopez uh the petitioner waived his claim for protection under the convention against torture and under a convention against torture claim nexus to a protected ground is not required so this case is readily distinguishable from on how lopez and in the case of bar dr nichols credible testimony not only established that salvadoran criminals and police officers would recognize someone like petitioner has a mental illness and that he would be targeted because of that mental illness it also establishes that because of petitioner's past mental health struggles and his routine hospitalizations and his refusal to take his medication and because he has no family support in el salvador and because the salvadoran government doesn't offer public assistance to the mentally ill the credible testimony and documentary evidence in this case compels a conclusion that it's very likely petitioner will be confined in el salvador's inpatient national mental health facility the national mental health hospital and interestingly your honors dr nichols actually did his dissertation on the national psychiatric hospital and his testimony and evidence of record demonstrates that individuals who are confined to the national psychiatric hospital are routinely subjected to forcible electroconvulsive therapy absent informed consent or anesthesia and that individuals are forced to undergo this in the record when there's no therapeutic purpose for this treatment to be performed on such individuals additionally dr nichols testified to and his declaration discusses incidents of forcible rape that occur at the hands of hospital staff against patients in el salvador's national psychiatric hospital petitioner would maintain that this evidence of record clearly contradicts the board's conclusion that any harm or potential torture he would suffer in el salvador's national psychiatric hospital would be attributable to a lack of resources or improper training of hospital staff indeed the evidence of record repeatedly demonstrates that there's a widespread societal stigma against the mentally ill in el salvador dr nichols testified that of over 6 000 doctors in el salvador only i believe four graduate per year in the field of psychiatric health precisely because of the stigma against mental health in el salvador the field is regarded with widespread disdain individuals who have mental illnesses and who display erratic behaviors are considered to be lazy violent crazy and incurable and it is precisely because of this societal stigma that individuals who are subjected to the confinement and care of the national psychiatric hospital suffer severe abuse harm and even torture and furthermore dr nichols repeatedly noted in his declaration and in his credible testimony that the salvadoran government is aware of the ongoing abuses that occur at the national psychiatric hospital but that it routinely fails to intervene to protect patients precisely because of the widespread societal stigma against the video and el salvador thank you your eyes thank you counsel we understand your arguments